DMP:AA
F. #2022R00378

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A CELLULAR TELEPHONE ASSIGNED TELEPHONE NUMBER 646-804-9774 AND IMEI NUMBER 83692054939562 BELONGING TO DARNELL BURGESS | APPLICATION FOR A SEARCH WARRANT FOR AN ELECTRONIC DEVICE<br><br>Case No. 22-MJ-1169 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, AUBREY VALENTINE, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of a cellular telephone assigned telephone number 646-804-9774 and International Mobile Equipment Identity ("IMEI") number 83692054939562 belonging to Darnell Burgess (the "SUBJECT DEVICE"), as described in Attachment A, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent assigned to the FBI New York Joint Terrorism Task Force ("JTTF").  In my duties as a Special Agent, I have gained training and experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, the exploitation of lawfully obtained evidence and data, and various other procedures.  As a Special Agent assigned to the JTTF, I am authorized to

investigate violations of laws of the United States, and as a law enforcement officer, I am authorized to execute warrants issued under the authority of the United States.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     On or about October 10, 2022, the Honorable Robert M. Levy, U.S. Magistrate for the Eastern District of New York, authorized an arrest warrant for Darnell Burgess based on a criminal complaint charging him with violations of 18 U.S.C. § 844(d) (receiving or attempting to receive an explosive in interstate commerce with intent to use it to threaten or harm a place or person), 18 U.S.C. § 844(e) (threats in connection with an explosive). The Complaint is attached as Exhibit 1 and incorporated by reference.

5.     Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that Darnell Burgess committed or attempted to commit a violation of 18 U.S.C. § 844(d) (receiving or attempting to receive an explosive in interstate commerce with intent to use it to threaten or harm a place or person), 18 U.S.C. § 844(e) (threats in connection with an explosive), 18 U.S.C. § 875 (threats to injure the person of another) (collectively, the "Subject Offenses").  There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

6.     The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

7.      As set forth below, there is probable cause to believe that the SUBJECT

DEVICE contains evidence, fruits, and instrumentalities of the Subject Offenses.

**<u>PROBABLE CAUSE</u>**

8.      The United States Attorney's Office for the Eastern District of New York

and the Federal Bureau of Investigation are conducting a criminal investigation of Darnell

Burgess for committing or attempting to commit the Subject Offenses.

I.      <u>Probable Cause that Darnell Burgess Committed the Subject Offenses</u>

9.      As set forth in paragraphs 2 to 14 of the Complaint, there is probable

cause to believe that Burgess attempted to purchase explosives and firearms and then threatened

to use those explosives and firearms to kill, injure, or destroy property related to Jane Does 1, 2

and 3.

II.     <u>Probable Cause that the SUBJECT DEVICE Contains Evidence of the
        Subject Offenses</u>

10.     The property to be searched is the SUBJECT DEVICE.  The SUBJECT

DEVICE is a cellular telephone assigned number 646-804-9774 and IMEI number

83692054939562, as described in Attachment A.

11.     The SUBJECT DEVICE is currently in law enforcement possession in the

Eastern District of New York.  The SUBJECT DEVICE was seized following the execution of a

warrant for the arrest of Darnell Burgess.  <u>See</u> <u>generally</u> Exhibit 1.  The SUBJECT DEVICE was

found on Burgess' person.

12.     As described in paragraphs 2 through 4 of the Complaint, Burgess placed

orders for explosives precursors—including items that can be used to create the explosive black

powder—via Amazon.  According to records from Amazon, the Amazon account was registered

with a telephone number the same as the SUBJECT DEVICE.

13.     As described in paragraphs 7 through 13 of the Complaint, Burgess also threatened to bomb or kill individuals and damage property.  On or about July 29, 2022, Jane Doe 1 and Jane Doe 2, both of whom personally know Burgess, reported to law enforcement that they were threatened by Burgess over Facebook messenger from an account with the display name "Burgess Darnell" (the "Facebook Account"), which Jane Doe 1 and Jane Doe 2 identified as belonging to Burgess.  Further, as described in paragraph 14 of the Complaint, Burgess also used the Facebook Account to attempt to purchase firearms.  According to records from Meta, the Facebook Account was registered with a telephone number the same as the SUBJECT DEVICE.

15.     Based on my training, experience, and participation in other investigations, I know that persons engaged in acts of bombmaking frequently use cellular phones and other electronic devices to search for techniques and information about how to build bombs, communicate with other known and unknown individuals about their plans to build or use bombs, and to store photographs, videos, search history, and other records that contain or constitute evidence of criminal conduct.  Based on my training, experience, and participation in other investigations, I know that individuals involved in bombmaking also commonly use cellular phones to purchase precursor materials and to find and communicate with suppliers.

16.     Similarly, individuals involved in bombmaking commonly use cellular telephones to search or browse the internet for information relating to their criminal conduct and to take and store photographs of their criminal activities.

17.     I am aware that most individuals who send and receive photographs and videos do so using electronic devices, including cellular telephones, and that individuals store the resulting digital files on electronic devices.  I am aware that, because digital photography and

4

videography are, for most people, the primary methods of photography and videography, individuals use their electronic devices, including cellular telephones, to store and view their digital photographs and videos.

18.    For the foregoing reasons, I submit that there is probable cause to believe that the SUBJECT DEVICE will contain evidence of Burgess engaging in criminal conduct, or attempting do the same, in violation of 18 U.S.C. §§ 844(d), 844(e) and 875(c).

## **TECHNICAL TERMS**

19.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.    Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.      Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.      Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.      GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often records the locations of where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special

6

sequence of numbers.  These signals are sent by radio, using specifications that are publicly

available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives

signals from at least four satellites, a computer connected to that antenna can mathematically

calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.      PDA:  A personal digital assistant, or PDA, is a handheld

electronic device used for storing data (such as names, addresses, appointments or notes) and

utilizing computer programs.  Some PDAs also function as wireless communication devices and

are used to access the internet and send and receive e-mail.  PDAs usually include a memory

card or other removable storage media for storing data and a keyboard and/or touch screen for

entering data.  Removable storage media include various types of flash memory cards or

miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run

computer software, giving them many of the same capabilities as personal computers.  For

example, PDA users can work with word-processing documents, spreadsheets, and presentations.

PDAs may also include GPS technology for determining the location of the device.

f.      Internet: The internet is a global network of computers and other

electronic devices that communicate with each other.  Due to the structure of the internet,

connections between devices on the internet often cross state and international borders, even

when the devices communicating with each other are in the same state.

g.      IP Address: An Internet Protocol address (or simply "IP address")

is a unique numeric or alphanumeric address used by computers on the internet.  An IP address is

typically a series of four numbers, each in the range 0-255, separated by periods (e.g.,

121.56.97.178).  Every computer attached to the internet computer must be assigned an IP

address so that internet traffic sent from and directed to that computer may be directed properly

from its source to its destination. Most internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

20. Based on my training, experience, and research, there is probable cause to believe that the SUBJECT DEVICE has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA, and to access the internet. In my training and experience, examining data stored on a device of this type can uncover, among other things, evidence of a crime as well as evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

22. There is probable cause to believe that things that were once stored on the SUBJECT DEVICE may still be stored there, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not

actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space — that is, in space on the storage medium that is not currently being used by an active file — for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.      Wholly apart from user-generated files, computer storage media — in particular, computers' internal hard drives — contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.      Similarly, files that have been viewed via the internet are sometimes automatically downloaded into a temporary internet directory or "cache."

23.     *Forensic evidence.*  This application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICE was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICE because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  On computers, virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, and the times the computer was in use.  Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.      Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a

computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

     e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

     24. *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICE consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the SUBJECT DEVICE to human inspection in order to determine whether it is evidence described by the warrant.

11

## **CONCLUSION**

      25.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the SUBJECT DEVICE, as described in Attachment A, to seek

the items described in Attachment B.


Aubrey Valentine
Special Agent
Federal Bureau Investigation


Sworn to before me by telephone this
_____ day of October, 2022


_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

## **ATTACHMENT A**

### **Property to be Searched**

The property to be searched is a cellular telephone bearing number 646-804-9774 and IMEI number 83692054939562 belonging to Darnell Burgess (the "SUBJECT DEVICE").

This warrant authorizes the forensic examination of the SUBJECT DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

All records on the SUBJECT DEVICE described in Attachment A that relate to violations and attempted violations of 18 U.S.C. §§ 844(d), 844(e) and 875(c) from February 1, 2022 until the date the warrant is executed, including but not limited to:

(a) Records, documents, information, transactions, orders, locations, social media records, photographs, audio recordings and/or videos related to threats, Amazon transactions, firearms, explosive devices, explosive device components and precursors, or acts of violence.

(b) Communications between Burgess and/or any other person regarding threats, firearms, explosive devices, explosive device components and precursors, or acts of violence.

(c) Search history related to threats, firearms, explosive devices, explosive device components and precursors, or acts of violence.

(d) All records and information related to the targets or potential targets against which or whom Burgess may have intended to deploy any explosive devices or firearms.

(e) Evidence indicating how and when the SUBJECT DEVICE was accessed or used, to determine the chronological and geographic context of account use and access.

(f) Evidence indicating the SUBJECT DEVICE owner's state of mind as it relates to the crimes under investigation.

(g) The identity of the user of the SUBJECT DEVICE, including records that help reveal the whereabouts of such person.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the investigative agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched* )<br>*or identify the person by name and address)* )<br> )<br>A CELLULAR TELEPHONE ASSIGNED TELEPHONE )<br>NUMBER 646-804-9774 AND IMEI NUMBER 83692054939562 )<br>BELONGING TO DARNELL BURGESS ) | Case No.     22-MJ-1169 |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____New York_____
*(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A (incorporated by reference).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B (incorporated by reference).

**YOU ARE COMMANDED** to execute this warrant on or before _____ *(not to exceed 14 days)*
❒ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____the Duty Magistrate Judge_____ .
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❒ for _____ days *(not to exceed 30)*   ❒ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____     _____
*Judge's signature*

City and state:     Brooklyn, New York          Hon. Ramon E. Reyes, Jr.          U.S.M.J.
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  22-MJ-1169 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date:  _____                    _____
                                                                         *Executing officer's signature*

                                                                         _____
                                                                         *Printed name and title*

## <u>ATTACHMENT A</u>

### Property to be Searched

The property to be searched is a cellular telephone bearing number 646-804-9774 and IMEI number 83692054939562 belonging to Darnell Burgess (the "SUBJECT DEVICE").

This warrant authorizes the forensic examination of the SUBJECT DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

**Particular Things to be Seized**

All records on the SUBJECT DEVICE described in Attachment A that relate to violations and attempted violations of 18 U.S.C. §§ 844(d), 844(e) and 875(c) from February 1, 2022 until the date the warrant is executed, including but not limited to:

(a)  Records, documents, information, transactions, orders, locations, social media records, photographs, audio recordings and/or videos related to threats, Amazon transactions, firearms, explosive devices, explosive device components and precursors, or acts of violence.

(b)  Communications between Burgess and/or any other person regarding threats, firearms, explosive devices, explosive device components and precursors, or acts of violence.

(c)  Search history related to threats, firearms, explosive devices, explosive device components and precursors, or acts of violence.

(d)  All records and information related to the targets or potential targets against which or whom Burgess may have intended to deploy any explosive devices or firearms.

(e)  Evidence indicating how and when the SUBJECT DEVICE was accessed or used, to determine the chronological and geographic context of account use and access.

(f)  Evidence indicating the SUBJECT DEVICE owner's state of mind as it relates to the crimes under investigation.

(g)  The identity of the user of the SUBJECT DEVICE, including records that help reveal the whereabouts of such person.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the investigative agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

EXHIBIT 1

DMP:AA
F. #2022R00378

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -

DARNELL BURGESS,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

S U P E R S E D I N G   C O M P L A I N T
A N D   A F F I D A V I T   I N
S U P P O R T   O F   A R R E S T
W A R R A N T

(18 U.S.C. §§ 844(d) & 844(e))

Case No. 22-MJ-1047

EASTERN DISTRICT OF NEW YORK, SS:

        CHRISTOPHER TROISI, being duly sworn, deposes and states that he is a

Detective with the New York City Police Department and a Task Force Officer with the Joint

Terrorism Task Force, duly appointed according to law and acting as such.

        On or about and between March 26, 2022 and August 2, 2022, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant

DARNELL BURGESS knowingly transported and received, and attempted to transport and

receive, in interstate and foreign commerce, an explosive, to wit: black powder, with the

knowledge and intent that it would be used to kill, injure, and intimidate any individual and

unlawfully to damage and destroy a building and other real and personal property.

        (Title 18, United States Code, Section 844(d))

On or about and between March 26, 2022 and August 2, 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DARNELL BURGESS through the use of the internet, an instrument of interstate and foreign commerce, knowingly and willfully made a threat to kill, injure and intimidate one or more individual, to wit: Jane Doe 1, Jane Doe 2 and Jane Doe 3, individuals whose identities are known to the deponent, and unlawfully to damage and destroy a building and other real and personal property, by means of an explosive, to wit: a bomb.

(Title 18, United States Code, Section 844(e))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.     I am a Detective with the New York City Police Department assigned to the FBI New York Joint Terrorism Task Force ("JTTF"). In my duties as a Detective, I have gained training and experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, the exploitation of lawfully obtained evidence and data, and various other procedures. As a Detective assigned to the JTTF, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer, I am authorized to execute warrants issued under the authority of the United States.

2.     On or about April 8, 2022, law enforcement was contacted by staff at Atlantic House Men's Shelter, which is located at 2402 Atlantic Avenue in Brooklyn, New York ("Atlantic House"). The staff observed several suspicious packages arrive at the facility that

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

were addressed to "Darnell" and intended for the defendant DARNELL BURGESS.  These packages contained a carbon dioxide tank, charcoal, potassium nitrate and wires.  BURGESS attempted to retrieve the packages, but the staff refused to give them to BURGESS.  Atlantic House staff also informed law enforcement that, in prior weeks, BURGESS had entered the shelter with a gas canister filled with gasoline and was in possession of ballistic bullet proof armor plates.

3.      Subsequent investigation revealed that the defendant DARNELL BURGESS placed orders via Amazon, using an account registered with a Google email address with the username "darnellburgess9" and a telephone number subscribed to in the name "Darnell Robert Burgess," for the following:

a.      On or about between about March 26, 2022 and April 1, 2022, BURGESS placed an order on Amazon.com for five pounds of ground yellow sulfur powder, one pound of potassium nitrate, a 20-ounce tank of carbon dioxide, two pounds of charcoal powder, 100 feet of copper wires, and a wireless remote-control switch, according to records obtained from Amazon.  These orders were subsequently cancelled.

b.      On about and between April 1, 2022 and April 6, 2022, the defendant DARNELL BURGESS, using the same Amazon account, again ordered five pounds of yellow sulfur powder, one pound of potassium nitrate, a 20-ounce tank of carbon dioxide, two pounds of charcoal powder and 100 feet of copper wires.  These packages were delivered to Atlantic House.  The packages and their contents are pictured below.






4.      I have spoken with an FBI explosives expert, and the expert has informed me that these materials can be used to create an explosive.  Specifically, black powder is made with, among other things, potassium nitrate, charcoal, and sulfur, and wires and a remote-control switch can allow for remote detonation of an explosive.  Similarly, a gas canister can operate as a container for an explosive.

5.	A judicially authorized search of the defendant DARNELL BURGESS's

phone revealed records relating to bombmaking and acts of violence, including:

a.	In or about November 2021, BURGESS obtained a copy of the

NYPD's Active Shooter Manual.

b.	An undated photograph saved on BURGESS' phone shows

a diagram for assembling guns.

c.	Between approximately March 2022 and April 2022, BURGESS

downloaded (a) the Anarchist's Cookbook, which includes bombmaking instructions, (b) an

image of a school shooting perpetrator, (c) news reports of shootings and suicide bombings,

(d) diagrams and images on how to build explosives using potassium nitrate, charcoal and sulfur,

(e) instructions on how to build a detonator, and (f) an image appearing to promote the shooting

of police officers with the caption "DESTROYING COPS," as pictured below.






6.      The search of the defendant DARNELL BURGESS's phone also revealed web searches relating to bombmaking, firearms and acts of violence, including:

a.      In or about January 2022, BURGESS searched for "attempted murder nys charge," "public execution," "what do they use to make a gun barrel" and "major components of a firearm."

b.      In or about February 2022, BURGESS searched for "capital murder" "bullet proof cars" and "police killings ny."

c.      In or about March 2022, BURGESS searched for "ted bundy," "thermobaric bomb vs nuclear" and "where can I buy potassium nitrate at in New York."

d.      In or about April 2022, BURGESS searched for "sulfur."

7.      The defendant DARNELL BURGESS threatened to bomb or kill individuals and damage property.  On or about July 29, 2022, law enforcement received reports that BURGESS was threatening to kill certain individuals.   Specifically, Jane Doe 1 and Jane Doe 2, both of whom personally know BURGESS, reported that they were threatened by BURGESS over Facebook messenger from an account with the display name "Burgess Darnell" (the "Facebook Account"), which Jane Doe 1 and Jane Doe 2 identified as belonging to BURGESS.  The Facebook Account was registered with the same Google email address as the Amazon account set forth above.

8.      After the initial report of threatening messages by Jane Doe 1 and Jane Doe 2, on or about July 30, 2022, the defendant DARNELL BURGESS made the following posts on the Facebook Account, which were provided to law enforcement by Jane Doe 1 and Jane Doe 2:

    a. "I'm omw rn someone losing they house," which I understand to mean that BURGESS is saying, "I'm on my way right now" and threatening to destroy someone's home.

    b. "RELAY THIS MESSAGE TELL [JANE DOE 1] I SAID U ALL VIOLATED ALL OF U AND IM ON YA AND FUCC YA DEAD AND UR FAMILY GMK FOR LIFE IM ON YA."  I understand "GMK" to mean that BURGESS is threatening to be the "Glenmore Killer."  Based on my training and experience and familiarity with the investigation, I understand BURGESS' reference to "Glenmore" to mean the public housing complex Glenmore Plaza, which is located in Brooklyn, New York.

    c. "IMMA MAKE YA KILL ME TO NYPDK."

    9. In addition, on or about July 30, 2022, the defendant DARNELL BURGESS posted the following threats on his Facebook Account, which were provided to law enforcement by Jane Doe 1 and Jane Doe 2:

    a. "OMW [Jane Doe 1]"

    b. "A BOMB 💣"



10.     On or about August 5, 2022, the Honorable Vera M. Scanlon, U.S. Magistrate Judge for the Eastern District of New York, authorized a warrant to search the Facebook Account belonging to the defendant DARNELL BURGESS.  A review of the Facebook account revealed that BURGESS sent multiple threats to shoot or kill Jane Doe 1, Jane Doe 2, and Jane Doe 2's relatives, including Jane Doe 2's mother: Jane Doe 3.  BURGESS also attempted to buy firearms through the Facebook Account.

11.     On or about August 1, 2022, the defendant DARNELL BURGESS, using the Facebook Account, sent threatening messages to Jane Doe 1 and others, including:

        a.      "[T]ell [Jane Doe 1] I'm going after hers"

        b.      "Cuzz if I'm gonna kill ha IMA do it"

        c.      "And she's getting shot"

12.     Also on or about August 1, 2022, the defendant DARNELL BURGESS, using the Facebook Account, sent threatening messages to Jane Doe 1 and others urging Jane

Doe 1 to "break up" with her boyfriend and threatening to bomb Glenmore: "IM BLOWING A BOMB IN GLENMORE."

13.     Further, on or about August 1, 2022, the defendant DARNELL BURGESS, using the Facebook Account, sent threatening messages to Jane Doe 2 and others, stating "They DIE" alongside photographs of Jane Doe 2's sister and brother, as well as Jane Doe 2's mother: Jane Doe 3.

14.     On or about August 2, 2022, the defendant DARNELL BURGESS, using the Facebook Account, also sent a message to another individual seeking to purchase a firearm, stating, among other things:

a.      "Yo need a gun"

b.      "Need a gun"

c.      "Beef in NYC hot"

d.      "Like I might die hot"

WHEREFORE, your deponent respectfully requests an arrest warrant so that the defendant DARNELL BURGESS, may be dealt with according to law.

It is further requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the affidavit and arrest warrant except that the undersigned will distribute copies of this charging document and any resulting arrest warrant to other law enforcement authorities as necessary to effectuate the defendant's arrest. Based on my training and experience, I have learned that criminals actively search for criminal affidavits and arrests warrants via the internet. Although I have reason to believe the defendant may be aware of the FBI's interest in his activities, I believe he is unaware of the full extent of the investigation into his violations of federal law. Therefore, premature disclosure of the contents of this affidavit and related documents will seriously jeopardize the investigation, including by giving the defendant an opportunity to flee, destroy or tamper with evidence, or change patterns of behavior.

CHRISTOPHER TROISI
Detective
New York City Police Department

Sworn to before me by telephone this
4th day of October, 2022

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   22-MJ-1047 |
| DARNELL BURGESS | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:      Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*    DARNELL BURGESS                                                                                      ,
who is accused of an offense or violation based on the following document filed with the court:

❑ Indictment  ❑ Superseding Indictment  ❑ Information  ❑ Superseding Information  ☑ Complaint
❑ Probation Violation Petition  ❑ Supervised Release Violation Petition  ❑ Violation Notice  ❑ Order of the Court

This offense is briefly described as follows:

Title 18, United States Code, Section 844(d) - attempting to transport and receive an explosive with intent to kill, injure, and intimidate any individual

Title 18, United States Code, Section 844(e) - threatening to kill, injure and intimidate one or more individuals by means of an explosive

Date:      10/04/2022                            *Robert Levy*
                                                                    *Issuing officer's signature*

City and state:      Brooklyn, New York                            Honorable Robert M. Levy
                                                                    *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____                            _____<br>*Arresting officer's signature*<br><br>_____<br>*Printed name and title* |

AO 442  (Rev. 11/11)  Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only
and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: _____

Known aliases: _____

Last known residence: _____

Prior addresses to which defendant/offender may still have ties: _____

_____

Last known employment: _____

Last known telephone numbers: _____

Place of birth: _____

Date of birth: _____

Social Security number: _____

Height: _____   Weight: _____

Sex: _____   Race: _____

Hair: _____   Eyes: _____

Scars, tattoos, other distinguishing marks: _____

_____

History of violence, weapons, drug use: _____

_____

Known family, friends, and other associates *(name, relation, address, phone number)*: _____

_____

FBI number: _____

Complete description of auto: _____

_____

Investigative agency and address: _____

_____

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*: _____

_____

Date of last contact with pretrial services or probation officer *(if applicable)*: _____

_____